CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ERICA CHOI (Bar No. 302351)
(E-Mail: Erica_Choi@fd.org)
SHANNON COIT (Bar No. 298694)
(E-Mail: Shannon_Coit@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ASHLEIGH BROWN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEIGH BROWN,<br><br>Defendant. | Case No. 2:25-CR-701-FMO<br><br>**MOTION TO COMPEL PRODUCTION OF COMPLETE PERSONNEL FILES AND MOTION IN LIMINE TO EXCLUDE TESTIMONY OF Z.C. FROM THE GOVERNMENT'S CASE-IN-CHIEF**<br><br>**Expedited Treatment Requested**<br>**Hearing Requested**<br><br>**T-Max Date: November 4, 2025** |

Defendant Ashleigh Brown, by and through her attorneys, Erica Choi and Shannon Coit, hereby moves the Court to compel the government to immediately produce the complete personnel files of all government witnesses who will testify at trial. In addition, the defense moves in limine to exclude the testimony of Z.C. from the government's case-in-chief at trial in this case.

///

///

These motions are based on the government's violation of the Court's Case Manage Order requiring the timely production of *Brady* and *Henthorn* materials, and the Court's specific order requiring *Henthorn* disclosures to the defense.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 27, 2025      By  /s/ Erica Choi
ERICA CHOI
SHANNON COIT
Deputy Federal Public Defender
Attorneys for ASHLEIGH BROWN

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. RELEVANT FACTS ............................................................................................3

    A.    Defense Requested *Brady* and *Henthorn* Materials......................................3

    B.    The Government Is On Notice About Self Defense And Use of Excessive Force...............................................................................................5

    C.    Defense Discovers Z.C.'s Criminal History ..................................................6

    D.    Defense Contacts the USAO With Its Findings. The USAO States It Was Not Aware of Z.C.'s Assault History. ..................................................6

III. ARGUMENT ......................................................................................................7

    A.    Z.C.'s Criminal History Is *Brady* and *Henthorn* Material and Is Relevant to the Elements of the Charge, Self-Defense, Jury Instructions, and Pending Defense Motions. .................................................7

    B.    Z.C.'s Personnel File Should Also Have Been Produced............................9

    C.    The Court Should Preclude Z.C.'s Testimony From the Government's Case-In-Chief and Require the Government to Produce of Complete Personnel Files for All Government Witnesses Who Will Testify............10

    D.    The Court Has Authority to Sanction the Government by Excluding Z.C. for Violating Its Orders.......................................................................11

IV. CONCLUSION .................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Brady v. Maryland*,
    373 U.S. 83 (1963)...................................................................................*passim*

*Giglio v. United States*,
    405 U.S. 150 (1972)..............................................................................................3, 7

*United States v. Bagley*,
    473 U.S. 667 (1985).................................................................................................7

*United States v. Bryan*,
    868 F.2d 1032 (9th Cir. 1989).................................................................................10

*United States v. Bundy*,
    968 F.3d 1019 (9th Cir. 2020).................................................................................10

*United States v. Cadet*,
    727 F.2d 1453 (9th Cir. 1984)..............................................................................3, 8

*United States v. Cano*,
    934 F.3d 1002 (9th Cir. 2019).................................................................................10

*United States v. Gatto*,
    763 F.2d 1040 (9th Cir. 1985).................................................................................11

*United States v. Henthorn*,
    931 F.2d 29 (9th Cir. 1991).............................................................................*passim*

*United States v. Safavian*,
    233 F.R.D. 12 (D.D.C. 2005)..................................................................................10

*United States v. Talbot*,
    51 F.3d 183 (9th Cir. 1995).........................................................................2, 11, 12

*United States v. W.R. Grace*,
    526 F.3d 499 (9th Cir. 2008)...............................................................................7, 11

*Youngblood v. West Virginia*,
    547 U.S. 867 (2006) (per curiam)...........................................................................10

**Federal Constitution & Statutes**

Fourteenth Amendment ..................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

18 U.S.C. § 111(a)(1) ................................................................................................ 2, 3

18 U.S.C. § 3500 ............................................................................................................ 3

**Federal Rules**

Fed. R. Evid. 609 ........................................................................................................... 9

Federal Rule of Criminal Procedure 16 ................................................................... 3, 7

Federal Rules of Criminal Procedure 12 ...................................................................... 3

Federal Rules of Criminal Procedure Rule 5(f) ...................................................... 3, 12

**State Statutes**

18 Pa.C.S.A. § 2709(a)(1) .............................................................................................. 1

Florida Statute § 509.143 ........................................................................................ 1, 6

Florida Statute § 316193(1) ..................................................................................... 1, 6

Pennsylvania Statute § 18.2709(a)(1) ..................................................................... 1, 6

**Other Authorities**

Assault,
https://www.legis.state.pa.us/WU01/LI/LI/CT/HTM/18/00.027.001.000
..HTM (last accessed on October 27, 2025) ............................................................... 1

## I. INTRODUCTION

Federal Protective Services Officer Z.C. claims he was assaulted by two protestors, Jonathan Redondo-Rosales and Ashleigh Brown, on August 2, 2025. Evidence obtained by the defense belies Z.C.'s claims. *See* Exhibit A, filed *in camera*. Z.C. aggressed Mr. Redondo-Rosales and Ms. Brown first.

Defense counsel made numerous requests for *Brady* and *Henthorn* materials. Over the span of **eight** weeks, defense counsel made **five** *Henthorn* requests to the government. Those requests were repeated over email, telephone, and eventually in Court. The Court ordered the government to file a declaration regarding its *Henthorn* review by October 14, 2025. On October 14, 2025, the government declared that it had conducted a review, and that there were no materials to produce to the defense under *Henthorn* or *Brady*. Trial is scheduled to begin between October 30 and November 4, 2025.

On October 23, 2025, defense counsel learned, independently and for the first time, that complaining witness Z.C. has criminal history. That history includes:

- "Harassment - subjecting a person to physical contact," in violation of Pennsylvania Statute § 18.2709(a)(1),[1] which falls within the criminal chapter for Assault,[2] convicted on June 17, 2021;
- Disorderly conduct, in violation of Florida Statute § 509.143, arrested on August 31, 2014; and
- Driving under the influence, in violation of Florida Statute § 316193(1), convicted on November 4, 2013.

---

[1] "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S.A. § 2709(a)(1).

[2] *See* Chapter 27, Assault, https://www.legis.state.pa.us/WU01/LI/LI/CT/HTM/18/00.027.001.000..HTM (last accessed on October 27, 2025).

1

This is extremely troubling. Z.C.'s criminal history should have been disclosed to the defense long ago. His recent assaultive conduct, in particular, is relevant impeachment material. His assault history is also relevant to the elements of a § 111 charge, a theory of self-defense, Ms. Brown's pending motion to compel excessive use of force material, her opposition to motion in limine to exclude evidence of post-assault injuries, and disputed jury instructions.

Z.C.'s history of disorderly conduct and DUI should also have been disclosed. Three arrests and two convictions in an eight-year span is alarming, especially when the conduct seems to be escalating in seriousness. At the very least, his criminal record should have been disclosed to the Court *in camera* so the Court could make a determination about materiality and disclosure to the defense. *See United States v. Henthorn*, 931 F.2d 29, 31 (9th Cir. 1991) ("If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an *in camera* inspection and evaluation.").

The government has lost its right to independently review and disclose *Brady* and *Henthorn* material in this case, and should be sanctioned. The Court should (1) order the immediate production of complete personnel files of all government witnesses who will testify at trial,[3] and (2) exclude Z.C.'s testimony from the government's case-in-chief for violating this Court's orders. Exclusion is an appropriate sanction in light of the government's egregious conduct. It swore, just days ago, in a declaration under penalty of perjury that there was no *Henthorn* and *Brady* material to produce to the defense. Such conduct warrants a significant sanction, and excluding Z.C.'s testimony from the government's case-in-chief is the appropriate remedy. *See United States v. Talbot*, 51 F.3d 183, 187 (9th Cir. 1995) (explaining a district court can exclude

---

[3] Personnel files can be produced under a protective order. The USAO and FPDO have stipulated to a standard protective order to streamline production of confidential and protected discovery and have previously agreed to protective orders for *Henthorn* materials. The defense is also willing to discuss specific protective order terms tailored to this case.

2

otherwise admissible government evidence when a violation of "any constitutional provision, federal statute, specific discovery order, or any other recognized right" has been shown).

## II. RELEVANT FACTS

Ms. Brown is charged with committing simple assault on FPS Officer Z.C. on August 2, 2025, under 18 U.S.C. § 111(a)(1), a misdemeanor. Ms. Brown had her initial appearance on August 5, 2025. Defense counsel was appointed on that date.

### A. Defense Requested *Brady* and *Henthorn* Materials.

On August 14, 2025, defense counsel made an initial discovery request. That request included: "complete discovery in this case, pursuant to Federal Rules of Criminal Procedure 12 and 16, and all other applicable rules, statutes, and case law, including *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), their progeny, and 18 U.S.C. § 3500." Exhibit B, Discovery Request, p. 5 (Aug. 14, 2025). The request also included "[a]ny and all personnel files of all law enforcement witnesses whom the government intends to call as a witness at trial. *United States v. Henthorn*, 931 F.2d 29, 31 (9th Cir. 1991); *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984)."

On September 8, 2025, the Court issued a Case Management Order Re: Discovery that ordered the government to produce, under Rule 5(f) of the Federal Rules of Criminal Procedure and *Brady*, all evidence that is relevant to the defendant's guilt or punishment, and/or "favorable to defendant on the issue of guilt or punishment," as well as "information required by *United States v. Henthorn*, 931 F.2d 29, 31 (9th Cir. 1991) (holding that 'the government has a duty to examine [the] personnel files' of testifying law enforcement officers and disclose any material information found therein)," by September 26, 2025. Exhibit C, Case Management Order, ECF No. 30, pp. 1-3 (Sept. 8, 2025).

On September 11, 2025, defense counsel sent a follow-up discovery request for: "Any documents that qualify as *Jencks* and *Henthorn*[] materials. I am making this

3

request early in the case because of late disclosure of these materials in other similar cases." Exhibit D, Follow-Up Discovery Request.

On September 29, 2025, on a phone call with government counsel, defense counsel once again requested *Henthorn* materials. Defense counsel specified the request was for underlying documents, as opposed to summaries, that would qualify under *Henthorn*.

On September 30, 2025, in an e-mail, defense counsel again asked for *Henthorn* materials in reference to FPS Inspectors Z.C., Eric Murberg, William Terpstra and others. Exhibit E, E-Mail from Defense Counsel to Government Counsel. (Sept. 30, 2025).

On October 10, 2025, the Court held a Pretrial Conference. The Court ordered the government to file a declaration by October 14, 2025, addressing the status of its obligations to disclose discoverable *Henthorn* material, if any, to the defendant.

On October 14, 2025, government counsel filed a Declaration Regarding *Henthorn* Disclosures. Exhibit F, Declaration Regarding *Henthorn* Disclosures, ECF No. 71 (Oct. 14, 2025). In its Declaration, the government stated:

> As of date of this declaration, the government has conducted a review of **all** applicable Henthorn material related to potential witnesses in this case. **It has not identified any materials necessary for disclosure to the defense at this time.** The government will continue to abide by its discovery and Henthorn obligations during the pendency of this matter.
>
> []To comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and Fed. R. Crim. P. 5(f), the government has sought out and produced or made available for inspection all known Brady evidence. The government is unaware of any relevant evidence in its possession that has not been produced or made available to defendant for inspection. The government's review for any additional evidence that falls under its discovery obligations, including under Brady and Rule 5(f), remains ongoing.

4

Exh. F at p. 3 (emphasis added).

## B. The Government Is On Notice About Self Defense And Use of Excessive Force.

On September 11, 2025, defense counsel made follow-up discovery requests aimed specifically at "use of force" materials and information. *See* Exh. D. Specifically, the defense sought (1) "[i]nformation about complaining witness FPS Officer Z.C.'s role within FPS including, but not limited to . . . [i]nformation about what trainings he has received on use of force"; (2) the "current FPS employee manual"; and (3) "[g]uidance, instructions, or directives for deployment, role, use of force, or similar topics" for FPS employees traveling to Los Angeles to address the "protests" in Los Angeles. *Id.* at 2. On September 24, 2025, after learning the name of the FPS operation that included Z.C., defense counsel further requested: "any memorandum, correspondence (such as a letter or email), manual, or similar communication regarding guidance, instructions, or directives for . . . use of force[] or similar topics relating to 'Operation Skipjack'." Exhibit G, Follow-Up Discovery Request (Sept. 24, 2025). Further, at the October 10, 2025, pre-trial conference, defense counsel raised in court that the government refused to produce use of force materials directly to the defense. The Court then ordered the parties to brief the issue, and on October 13, 2025, the defense filed a motion to compel the use of force materials, ECF No. 69, which the government opposed, ECF No. 76. This motion is still pending.

As to self-defense, on September 23, 2025, counsel met-and-conferred on motions in limine the parties planned to file. The government anticipated moving to exclude a theory of self-defense. Defense counsel responded that the defense would oppose such a motion. The parties conferred further. On September 26, 2025, defense counsel sent the government a proposed jury instruction that focused on the excessive use of force. The government filed the parties' proposed disputed jury instructions,. *See* Joint Disputed Jury Instructions, ECF No. 39. Specifically, in the disputed jury instructions, the defense objected to the government's proposed Instruction No. 3 for

the charge in this case, which included (1) an "if applicable" qualifier to the self-defense element and (2) additional language unrelated to self-defense: "The excessive use of force in the pursuit of official duty is not considered a good faith performance of official duties." *Id.* at 12. The defense further included argument on both of these additions, which discussed the use of excessive force throughout. *See id.* at 14-15. The parties also briefed the issue of whether a theory of self-defense would be permitted at trial, and both parties addressed the use of excessive force as a basis of self-defense. *See* ECF Nos. 40, 60, 63.

### C.  Defense Discovers Z.C.'s Criminal History

On October 23, 2025, while preparing for trial in this matter, defense counsel learned that Z.C. has criminal history that includes at least:

- Harassment - subjecting a person to physical contact, in violation of Pennsylvania Statute § 18.2709(a)(1), convicted on June 17, 2021;
- Disorderly conduct, in violation of Florida Statute § 509.143, arrested on August 31, 2014; and
- Driving under the influence, in violation of Florida Statute § 316193(1), convicted on November 4, 2013.

Exhibits H, I, filed under seal. These records were obtained through independent defense investigation. Of note, the defense does not have access to law enforcement databases and thus cannot confirm whether this is Z.C.'s complete criminal history or whether there is additional relevant information about these or any other arrests or convictions.

### D.  Defense Contacts the USAO With Its Findings. The USAO States It Was Not Aware of Z.C.'s Assault History.

On October 26, 2025, after further research and internal discussion, defense counsel contacted government counsel regarding its findings. Government counsel requested a few hours to investigate and respond. Later that evening, the parties conferred by telephone. Government counsel indicated that it was not previously aware of Z.C.'s

2021 conviction for assault. The government had asked Z.C. about his prior convictions in interviews. The government was only aware of Z.C.'s 2014 arrest for disorderly conduct and his 2013 conviction for driving under the influence. In addition, government counsel stated that it had not conducted an independent *Henthorn* review of Z.C., but had relied on the word and responsiveness of another agency (FPS) to conduct a *Henthorn* review of Z.C.'s personnel file.

### III.   ARGUMENT

The defense's right to material information stems from the Due Process Clause of the Fourteenth Amendment, and has been analyzed by Courts in *Brady*, *Giglio*, and its progeny, and incorporated into, and expanded upon by, Federal Rule of Criminal Procedure 16. Beyond these constitutional principles and Rule 16, district courts possess general inherent authority to manage their dockets, including by issuing discovery orders, as the Court did here with its Case Management Order and its specific order for the government to disclose discoverable *Henthorn* material to the defendant in this case by October 14, 2025. *See, e.g.*, *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008).

### A.   Z.C.'s Criminal History Is *Brady* and *Henthorn* Material and Is Relevant to the Elements of the Charge, Self-Defense, Jury Instructions, and Pending Defense Motions.

"The *Brady* rule is based on the requirement of due process." *United States v. Bagley*, 473 U.S. 667, 675 (1985). "Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *Id.* "Impeachment evidence . . . is evidence favorable to an accused . . . so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.* "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule of *Brady*." *Id.* at 677 (cleaned up).

7

When the defense requests materials of testifying officers, the government must "disclose information favorable to the defense that meets the appropriate standard of materiality." *Henthorn*, 931 F.2d at 31 (quoting *United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984)). "If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an *in camera* inspection and evaluation." *Id.*

At a minimum, the government should have submitted information about Z.C.'s assault conviction to the Court for an *in camera* inspection and evaluation. Z.C.'s history of assaultive conduct is important impeachment material. As the government has said, "the trial will likely be a credibility contest between Z.C. and defendant." Govt. Motion in Limine #2 to Admit Evidence of 404(b), ECF No. 42 at 3.

The government's failure to disclose Z.C.'s assault history is extremely troubling considering the testimony it plans to elicit at trial. Z.C. recently told prosecutors that he policed other protests, that those other protests were "peaceful," and that he has "not been assaulted at any other protests while employed by FPS." Exhibit K, DHS FPS Activity Summary Report, AUSA Interview of Z.C. (Oct. 16, 2025). The obvious implication of these statements is that Z.C. is a peaceful person, and that Ms. Brown is not. Z.C.'s assault history critically belies this false and prejudicial narrative. In a "credibility contest between Z.C. and defendant," the government failed to disclose critical impeachment evidence. Even worse, the government seeks to portray Z.C. as peaceful while seeking to introduce 404(b) evidence to depict Ms. Brown as a dangerous person with a vendetta against law enforcement, even though it is *Z.C.*, not Ms. Brown, who has been convicted of assaultive conduct.

Not only is Z.C.'s criminal history *Brady* and *Henthorn* material, his history of committing assault directly supports multiple defense theories. As discussed above, the government knows well that self-defense and excessive force are at issue in this case. In a motion in limine filed on September 26, 2025, the government sought to introduce 404(b) to "**undermine[] defendant's anticipated defense that she was a peaceful**

8

**victim, accidentally hit Z.C., or was responding to excessive force**" and to "**rebut[] any claim of self-defense, or allegation of excessive force by law enforcement in the instant matter**." ECF No. 42, at 9, 12 (Sept. 26, 2025) (emphasis added). Z.C.'s own history of assaultive conduct would clearly be relevant to those defense theories. As the defense made clear in its meet-and-confers, disputed jury instructions (ECF No. 39), motion to compel use-of-force materials (ECF No. 69), and oppositions to the government's motions to exclude post-assault evidence and self-defense theories (ECF Nos. 59, 60), information about Z.C.'s recent (only four-year-old) criminal assault conviction would support the defense's theories in this case.

This information should have been disclosed prior to motions deadlines, when they could be used by the defense. After the government's required disclosure, it is for the Court to decide whether a prior conviction can be used to impeach. *See* Fed. R. Evid. 609 ("[F]or any crime regardless of the punishment, the evidence must be admitted if ***the court*** can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement.") (emphasis added). The government has hamstrung both the defense and the Court by failing to disclose this *Brady* and *Henthorn* material.

**B.  Z.C.'s Personnel File Should Also Have Been Produced.**

In addition to his criminal record, the government also should have produced Z.C.'s personnel file. Defense counsel and the Court should have had an opportunity to review any information FPS has about Z.C.'s assault history, as well as the agency's knowledge about Z.C.'s performance while on probation or supervised release (if applicable).

The *absence* of information about Z.C.'s criminal record in his personnel file would also be *Brady*. For instance, if FPS did not know about Z.C.'s criminal history, any concealment of his arrest and conviction history would be evidence of dishonesty and thus have impeachment value. If he minimized or left out information about his arrests or convictions, that, too, could be *Brady*.

9

**C.     The Court Should Preclude Z.C.'s Testimony From the Government's Case-In-Chief and Require the Government to Produce of Complete Personnel Files for All Government Witnesses Who Will Testify.**

The government's affirmative obligation to learn of *Brady* evidence extends to "information known to other agents of the government" of which the prosecutor did "not know but could have learned," including "information held by subordinates such as investigating police officers." *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019). Furthermore, the prosecution is presumed and "deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). A *Brady* violation occurs "when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor," and an agency's *Brady* violation will be imputed to the prosecution). *Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (per curiam). The government's *Brady* obligations are broader pre-verdict than on appeal. *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) ("[T]he retrospective definition of materiality is appropriate only in the context of appellate review; thus, trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial.") (citing *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("The question before trial is not whether the government thinks that disclosure of the information or evidence . . . might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed.")) (other citations omitted).

The government has committed a breach of trust in this case. It abused any right to independently review personnel files and determine what constitutes *Brady* or *Henthorn* material subject to disclosure. The Court should therefore require the government to immediately produce the complete personnel files of all government witnesses who will be called to testify. Only then can the defense be confident that the

government has not withheld other discoverable evidence before trial. More importantly, the Court should preclude Z.C. from testifying in the government's case-in-chief.

### D. The Court Has Authority to Sanction the Government by Excluding Z.C. for Violating Its Orders.

"[T]he district court is charged with effectuating the speedy and orderly administration of justice." *W.R. Grace*, 526 F.3d at 508. "There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Id* at 508-09. Incumbent in that principle is the understanding that "[a]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *Id.* at 509 (citations omitted).

When the government violates a specific discovery order, "the district court may exclude evidence as a sanction." *W.R. Grace*, 526 F.3d at 516. A "district court can exclude otherwise admissible government evidence only when a violation of 'any constitutional provision, federal statute, specific discovery order, or any other recognized right' has been shown." *United States v. Talbot*, 51 F.3d 183, 187 (9th Cir. 1995) (quoting *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985)). In *Talbot*, the Ninth Circuit upheld the district court's exclusion of a government witness when the government failed to file a pretrial witness list, pursuant to the Local Rules of Practice for the United States District Court for the Northern District of California. The district court in *Talbot* "reiterated its request" at the pretrial conference, and the government did not name its witness until "several weeks after its pretrial papers had been filed." *Id*. "As a violation of a specific discovery order' ha[d] been demonstrated, the district court was free to exclude the government witness." *Id.* at 188. The

government appealed. The Ninth Circuit found no abuse of discretion and affirmed the court's exclusion order. *Id.*

The government's conduct in this case is far more egregious than that in *Talbot*. Worse than a late filing of its proposed trial witnesses, the government affirmatively declared under penalty of perjury that there were no *Brady* or *Henthorn* materials to disclose to the defense when, in fact, there exists crucial impeachment material about Z.C., the chief government witness in an assault case. Exclusion of Z.C. from the government's case-in-chief is an appropriate sanction for the government's violations of (1) the Court's Case Management Order requiring the government to produce all information or evidence known to the government that is relevant to the guilt or punishment of the defendant, including, but not limited to, exculpatory evidence, under federal law, Rule 5(f), and *Brady*, and to make that initial disclosure by the discovery cutoff of September 26, 2025; and (2) the Court's specific order for the government to file a declaration by October 14, 2025, addressing the status of its obligation to disclose discoverable *Henthorn* material, if any, to the defense.

## IV.  CONCLUSION

For the reasons explained herein, the Court should preclude Z.C. from testifying in the government's case-in-chief, compel the government to produce all personnel files of the government witnesses testifying at trial, or any other remedy deemed appropriate by the Court.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 27, 2025      By  */s/ Erica Choi*
ERICA CHOI
SHANNON COIT
Deputy Federal Public Defender
Attorneys for ASHLEIGH BROWN

12